The fifth argument of the day is in Appeal No. 23-3314, Comedica Incorporated v. Hill-Rom Services. Mr. Cook, nice to see you. Go right ahead. If it pleases the Court, good afternoon, judges. My name is David Cook. I represent the appellants who is Comedica in this case. During my brief time, I want to address two of the pertinent issues. One, waiver, and two, the pleading standard. First the waiver issue is this, and it really boils down to the definition of comedic intellectual property. The problem at the underlying district court level is the reference to comedic intellectual property only referenced page one of the post-acute care contract. Page one of the post-acute care contract said comedic intellectual property shall include the patents, trademarks, and copyrights that are listed on Exhibit B. And as a result of that, the district court found that, the district court considered that and found that, hey, product is not, for product to, for Valero to meet the definition of a product, it must be supported by one or more valid claims to comedic intellectual property. The problem is Exhibit B includes another definition of comedic intellectual property. It says comedic intellectual property shall also include trade secrets, knowledge, and know-how associated with comedic intellectual property. In the underlying case, Comedica filed a breach of contract claim. They referenced the product definition. The product definition referenced the comedic intellectual property. The problem, again, was they did not reference the entire definition of comedic intellectual property. And under the case law, as a new factual allegation, this court will consider new factual allegations. But it will not consider new issues, claims, or arguments on appeal. When your client saw the dismissal order, what I can't figure out, if your position is right, your client's position is right, you should have seen the dismissal order and then instantly amended your complaint and honed right in on the know-how argument. Your Honor, you bring up a good point. And you didn't do that. Or whoever was representing the company. Whoever was representing the company did not. Right. Yes. Right. And we acknowledge that it was not referenced in the underlying lawsuit. They did not take the opportunity to reference the entire definition of comedic intellectual property in the response to the motion to dismiss and did not file an amended petition. It's not just the definition. The problem, I think, your client's dealt you a tough hand here. The problem is that it's not just the definition that was omitted. It's factual allegations about drawing upon know-how to produce the competing product that were omitted. And when you look at the complaint that was dismissed, it's very hard to, at least for me, in overlooking an allegation that Hill-Rom drew upon the know-how of Comedica. So let me address that. What are the best paragraphs for that? The best paragraphs for that? There's no question. There's allegations that they're identical, et cetera, et cetera. Right. The best paragraph for that is where Hill-Rom, on paragraph 35, the characteristics of Mendenham and Villar are identical in each of the following instances. And then they list 15 or so identical characteristics for each. In addition, there are statements and there are references to a YouTube. It's about a one-minute and 50-second video where Hill-Rom put together the video for Mendenham, and they put together the video for Villar, and if you play them side-by-side, they're the exact same things. And what it does is it touts the therapy related to Villar, which is the exact same therapy and the way that it was used with Mendenham. That is the knowledge and know-how that was associated with Medineb that Villar used to refine and enhance the existing Medineb product. And what's important to note here is that when Medineb, I mean, when Comedica and Hill-Rom first entered into a contract, it was on an acute care product, which was Medineb. The acute care product was a product that was used in the hospital. The post-acute contract was a contract for a Medineb product that would be refined and enhanced that would be used in the home. At the time they signed the Comedica contract, I mean, the post-acute care contract, there was no at-home Medineb unit. So the parties knew that Hill-Rom would use the knowledge and know-how associated with the Medineb, the patent, and then they would refine and enhance it, and then they would create, which is Villar, it could have been called Medineb at home. And the facts support that. So the issue that they raise on waiver is, look, this is a brand-new argument or it's a new claim. And so, therefore, this court can't consider it unless certain exceptions apply. That's not the case. The underlying complaint was a contract claim. It's still a contract claim. It hasn't morphed into anything else. The contract claim asserted that Hill-Rom had breached the post-acute care contract, and they cited the term product because if it was a product, they would have to pay royalties on it. The product definition included the reference to Comedica intellectual property. They attached the contract along with the exhibit to the petition but failed to reference, again, the entire definition of Comedica intellectual property. So on appeal to a 12B6 granting, we're not arguing it's a new claim. It's still a breach of contract. It never was a patent infringement claim. We're not arguing that this is a—we're making a new argument that it's a different provision of the contract. It's the exact same provision of the contract. Well, actually, but, counsel, you are, and, you know, I guess this is the problem I'm having with this case. Judge Scudder referenced, where did the district court err? Because you can't attach a however-many-pages-this-is contract not mention in the allegations of the complaint the provisions that you're relying upon, you know, so there was no opportunity for Judge Pratt to rule on this. And you're asking us now on appeal to give Comedica a break. And I guess my question for you is what are the best Seventh Circuit cases that you rely on for us to give you a break on not raising this with Judge Pratt below that are not pro se cases because there was counsel here and there was an opportunity to amend, as Judge Scudder said, right? Yes. To answer your question, one of the best cases is County of McElhaney Insurance Company of the West, which stands for the proposition the court will consider factual allegations raised for the first time on appeal. This is a factual allegation raised for the first time on appeal. And we acknowledge that the district court didn't have before her at the time the entire definition of Comedica intellectual property. But it is a term in the contract that was argued at the time. It just wasn't a complete one. I don't know that we're asking for a break. What I'm asking is that the court will follow this case law and consider this new factual allegation. In addition, Dawson v. General Motors case. It's worse than, I think it's worse than that, unfortunately. It's not just that the full contract wasn't attached. It was that, unless I'm mistaken, the brief that was submitted by your client in opposition to your adversary's motion to dismiss never even argued the know-how point because it's possible, had you argued the know-how point, that the district court judge could have said, what are they talking about because I don't see that in the contract and then sought, asked the parties to supplement the record or somebody must have left a page out or something. But when, as Judge Maldonado suggested, when it's not even argued, let alone put in front of the judge, it's very hard to say that the district court failed to address something that was never even presented, either in argument or as far as record support. And the argument is the court failed simply because it didn't have the entire Comedica intellectual property. Well, the court didn't fail. Comedica failed. Yes. I mean, who? Right. I mean, it's hard. The court's not a party to the contract. Right. Comedica failed. And we're on appeal. And I'm asking the court to follow the case law that would allow this court to consider any factual allegations. I have about 29 seconds. I know I preserved two minutes. Okay. We'll let you save that remaining time. Let's hear from Hill Rom's counsel. Please, the court. Good afternoon, Your Honors. John Maley for Hill Rom. Following up on the court's questions, Chief Judge Pratt did not err. In fact, what Comedica is trying to do now with its third counsel is, I think, an impossible lift because the know-how argument, one, was not pleaded. Those words never appear. Two, wasn't added under Rule 15 after we moved to dismiss, which they had, as of right, that chance to do so. Instead, they opposed our dismissal motion. Those words nowhere appear in the brief. Judge Pratt, not required to, held oral argument, which is an exception in the Southern District, doesn't happen very often in dismissal motions or summary judgment motions, had a thorough, live, on-the-record oral argument that, Your Honors, the transcript is in the record. The words of know-how never uttered by prior counsel. It was a sophisticated law firm with sophisticated attorneys, and there's a reason why they didn't argue it. We'll get to that in a minute. Dismissal, right to amend, 14 days. They asked for extension. We said, sure. They said, we need to consider whether we're going to amend. Got granted the extension. Still no amendment. Asked for a second extension. Going to switch counsel. Litigants, this court's case law, repeatedly states that the litigant lays an argument of failing to make it before the district court, including in pleadings at 12B6. Why didn't the first law firm raise know-how when we had pre-suit back and forth with sophisticated litigants? Why didn't second counsel, sophisticated law firm, raise know-how? Because know-how, contrary to what's in counsel's brief and what's in counsel's argument today, know-how is not associated with metadata. That is not the language. It's appurtenant to the patents. The patents are listed in Exhibit 1-3 to the complaint, and it is an 18-page contract. Your Honor, it's not Judge Pratt's job to go through and figure out, oh, what's the claim here? Patents, there you go, Your Honor. And so appurtenant means connected to. So know-how, to be actionable, would have to be part of, pertinent to, those patents. So essentially, when the parties negotiate this contract, which, by the way, HILROM is still complying with and still paying royalties on the MetaNet product. Comedica wants to rewrite the contract and, hey, let's get the next product that HILROM might come up with through its own patent work, through its own design. So your point at a more detailed level is that when you look at the 18 items that are covered by patent at the time, that those are various devices, but they are emphatically not the MetaNet device. They are not the Valero device. The Valero device. That's correct. The HILROM, which, if you think about this like cars, all right, we all have a, most of us have driven a car that gets us from point A to point B. You had just a car in the last case. This device, a great device like the car, the Valero has a different engine.  The MetaNet had a pneumatic one. It's fine. It's like gas versus diesel versus electric. MetaNet has a certain interface. Valero has a sophisticated interface software-wise. And we look in the record. This is all record evidence. I'm not just pulling this out of the marketplace. When we look at the FDA submission that they provided, you'll see there are differences in these products in what they do. Valero has a higher high pressure and actually has a negative pressure. Both great products, but they're a little different in design. And to be able to bring, by the way, there's no patent infringement claim that's ever been brought. That was affirmed below. Why not? These are smart lawyers that previously had the case and had the case before it was filed. There was no basis to it. You look at the patents. Those are public. Patent lawyers look at that and say, oh, here's the next product. Does it infringe? No. They've pursued litigation. If they had a patent claim, rest assured they would have brought it. What the negotiated contract also provided Comedica with is essentially a contractual basis for a patent infringement case. It's covered by, pertinent to, covered by intellectual property, covered by as a term of art, and we cite this in the argument below. This court has used that term, Supreme Court, Judge Lawrence in the Boston Scientific case. Covered by means protected by a patent claim. Patents have claims. We claim this right. We claim that right. And so to have this breach of contract for the capital P product, Comedica has to show, and they had to be able to, under Rule 11 and Section 1927 and Title 28, be able to plead. Oh, there's a violation. There's an infringement of these covered patents, this covered intellectual property. They couldn't do that. Credit to counsel below. They withdrew. Good, skilled, aggressive plaintiff's counsel. They withdrew rather than amend because they couldn't, as offered to the court, do so. Respectfully, Your Honor, even if the know-how had been pleaded, to your point earlier, Judge Sketter, there's nothing else. You can't just say, oh, breach of contract because know-how, not associated with, but pertinent to patents. That's not enough. That's not Iqbal Twombly plausibility. You've got to go further. And even by this amendment on appeal effort, there's still nothing because there can't be. You can't just claim patent infringement loosely and not be subject to sanctions. Respectfully request that the judgment be affirmed below and, as we noted in the end of our brief, to consider Rule 38 being in play in this case, Your Honor. Thank you for your time. Thanks, Mr. Maley. Mr. Cook? Just briefly. I only have about 30 seconds. I just wanted to point out that the argument that this is a new factual allegation was never disputed. I think what they raised, they said that this was a new argument. This is not a new argument. It's a new factual allegation. It is the full definition of co-medica intellectual property, and this court has the discretion to consider that on appeal. And I would ask that the court consider the new allegation, co-medica intellectual property, including know-how and knowledge associated or pertinent to patents, and to reverse the trial court's opinion and to render it for further proceedings. Okay. Thank you, Mr. Cook. Mr. Maley, again, thanks to you. We'll take the appeal under advisement. Thank you, Your Honor.